# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF KENTUCKY
# AT BOWLING GREEN

DAVID ANDERSON                                                                            PLAINTIFF

v.                                                       CIVIL ACTION NO. 1:16CV-P60-GNS

JACKIE STRODE *et al.*                                                  DEFENDANTS

## MEMORANDUM OPINION AND ORDER

Defendant Shawn Whittlesey, by counsel, filed a motion for summary judgment (DN 31). Plaintiff David Anderson, who is proceeding *pro se*, filed a response and supplemental response (DNs 33 & 35). For the reasons that follow, Defendant's motion will be granted.

**I.**

Plaintiff, a convicted prisoner at the Kentucky State Reformatory, filed a complaint and amended complaint pursuant to 42 U.S.C. § 1983 (DNs 1 & 6) complaining about his detention at the Warren County Regional Jail (WCRJ). On initial review of the complaint and amended complaint pursuant to 28 U.S.C. § 1915A, the Court allowed the Eighth Amendment excessive-force claim to proceed against Defendant Captain Shawn Whittlesey in his individual and official capacities for damages.

In the complaint, verified under penalty of perjury, Plaintiff alleged that on June 5, 2015, "I was placed in restraint chair at the [WCRJ] for being aggressive toward Dept. Jailer Shane Dobbs. At Approximately 9:20 AM. At Approximately 9:40 Captain Shawn Whittlesey tased me because I had taken my right hand out of the restraints." Plaintiff indicated that he asked for a copy of the medical report from when he was seen by medical after being tased but that Southern Health Partners told him there were no records for the date of the incident. Plaintiff

attached two incident reports to the complaint regarding the June 5, 2015, incident. One report was by Lt. Eddie Pendleton, and the other was by Defendant Whittlesey.

Following the filing of the complaint and amended complaint, Plaintiff filed a "Motion for Arguments" (DN 15) in response to Defendant's first motion for summary judgment on the issue of exhaustion of administrative remedies. Therein, Plaintiff set out additional facts regarding the June 5, 2015, incident. He stated:

> I was in Cell A . . . at 0745 hours I reached out my tray slot to throw a milk crate at the door A-Side Isolation Door #47 and upon doing so Deputy Jailers Cert John Sanders, Shane Dobbs, Lt. Eddie Pendleton entered A-Side Isolation Door #47 & my cell #50 door was opened up as well I was talking to Shane Dobbs & Eddie Pendleton and they instructed me to stop acting up or they would strip me out and take all of my stuff and I told them we're gonna fight then they instructed me to stand up and go to the back of my cell but I refused to move and by doing so Shane Dobbs pushed on my chest 3 times with both of his hands and I then took a combative stance against Shane Dobbs and told him if you touch me again I will F- you up then Lt. Eddie Pendleton aimed his taser at me and get down now, lay on your stomach, put your hands behind your back and don't move and was handcuffed by Cert John Sanders and was escorted to booking I was then placed in the restraint chair for a period of four hours in Cell Big Two on camera I moved the chair rocking it to move it around the front of the cell after I got loose out of the restraints they put me back in them and told me if I get loose again they would tase me and put me in mechinicle restraints and I said go ahead and do so I will sue you for it because I know it is against the law to tase someone in restraints I then took my rights hand out because it hurt and then Captain Shawn Whittlesey entered Cell Big 2 and fired his taser in my right thigh for about 30 to 45 seconds then Lt. Eddie Pendleton entered Cell Big 2 to put my right hand back into the restraints after I ate lunch in the restraint chair I was then checked by Medical Tech Sabrina and was put on medical observation for being tased for a few days. I then filed a grievance the next day after being taken off disaplinary observation for my actions against Shane Dobbs and I did not get a response on my grievance until I got a copy of my grievance in legal mail here at Kentucky State Reformatory[.]

(DN 15).

**II.**

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party moving for summary judgment bears the burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

The moving party's burden may be discharged by demonstrating that there is an absence of evidence to support an essential element of the nonmoving party's case for which he has the burden of proof. *Id.* Once the moving party demonstrates this lack of evidence, the burden passes to the nonmoving party to establish, after an adequate opportunity for discovery, the existence of a disputed factual element essential to his case with respect to which he bears the burden of proof. *Id.* If the record taken as a whole could not lead the trier of fact to find for the nonmoving party, the motion for summary judgment should be granted. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

Where the nonmoving party bears the burden of proof at trial, "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 323. The nonmoving party must do more than raise some doubt as to the existence of a fact; the nonmoving party must produce evidence that would be sufficient to require submission of the issue to the jury. *Lucas v. Leaseway Multi Transp. Serv., Inc.*, 738 F. Supp. 214, 217 (E.D. Mich. 1990). The moving party, therefore, is "entitled to a judgment as a matter of law because the nonmoving party has failed to make a sufficient showing on an essential element of [his] case with respect to which [he] has the burden of proof." *Id.* (internal quotation marks omitted).

**III.**

A convicted prisoner's only avenue for pursuing an excessive force claim is through the Eighth Amendment's Cruel and Unusual Punishments Clause. *Combs v. Wilkinson*, 315 F.3d 548, 556 (6th Cir. 2002). When assessing a claim of excessive force, "the 'core judicial inquiry,' [was] . . . 'whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.'" *Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010) (quoting *Hudson v. McMillian*, 503 U.S. 1, 7 (1992)).

"To determine such motivations on the part of correctional officers, courts should consider the reasons or motivation for the conduct, the type and extent of force applied, and the extent of inflicted injury." *Caldwell v. Moore*, 968 F.2d 595, 600 (6th Cir. 1992) (citing *Whitley v. Albers*, 475 U.S. 312, 320-22 (1986)). A court should also consider factors such as "the extent of the threat to the safety of staff and inmates, as reasonably perceived by the responsible officials on the basis of the facts known to them, and any efforts made to temper the severity of a forceful response." *Whitley*, 475 U.S. at 321; s*ee also Hudson*, 503 U.S. at 7.

"[N]ot 'every malevolent touch by a prison guard gives rise to a federal cause of action.'" *Wilkins*, 559 U.S. at 37 (quoting *Hudson*, 503 U.S. at 9). The mere fact that a prisoner was subjected to physical contact which may have been forceful, and which may even amount to assault under common law, does not itself show a constitutional violation. *See Pelfrey v. Chambers*, 43 F.3d 1034, 1037 (6th Cir. 1995); *Parrish v. Johnson*, 800 F.2d 600, 604 (6th Cir. 1986). In the prison setting, "'good faith use of physical force may be necessary to maintain prison security and discipline.'" *Lockett v. Suardini*, 526 F.3d 866, 875 (6th Cir. 2008) (quoting *Williams v. Browman*, 981 F.2d 901, 905 (6th Cir. 1992)). "[T]he reasonableness of force

depends on the circumstances under which it is used. Greater force may be reasonable when used in response to a serious disturbance or acts of inmate[']s violence." *Drummer v. Luttrell*, 75 F. Supp. 2d 796, 803 (W.D. Tenn. 1999). Prison officials may use physical force in the form of tasers "to compel obedience by inmates." *Id.*; *see also Jennings v. Mitchell*, 93 F. App'x 723, 725 (6th Cir. 2004) (holding no constitutional violation for pepper spraying prisoner who repeatedly refused direct orders to exit the shower).

To his motion for summary judgment, Defendant Whittlesey attaches an affidavit by Lt. Eddie Pendleton ("Pendleton") (DN 31-2, Ex. 1) and his own affidavit (DN 31-3, Ex. 2) detailing the events on June 5, 2015. According to the affidavits, at around 8:30 a.m. on June 5, 2015, Plaintiff "engaged in disruptive behaviors that required his relocation to an observation cell" (DN 31-2, Ex. 1, Pendleton's Aff.). Deputy Shane Dobbs ("Dobbs") advised Pendleton that Plaintiff was "being very disruptive, yelling, hitting the door to his cell." *Id.* Pendleton and Dobbs went to Plaintiff's cell; Dobbs warned Plaintiff that if he did not stop being disruptive he would be placed in isolation; Plaintiff began yelling and cursing at Pendleton and Dobbs; Dobbs instructed Plaintiff to pack his belongings, but Plaintiff refused and stated, "You have a fight on your hands"; Plaintiff "balled his fist and took a combative stance toward Dobbs"; Pendleton drew his taser, and Plaintiff obeyed his order to lay on his stomach on the bunk; Deputy John Sanders placed mechanical restraints on Plaintiff's hands; and Plaintiff was escorted to the restraint chair and secured. *Id.*

At approximately 9:20 a.m., Defendant Whittlesey noticed that Plaintiff had somehow removed the restraints from his hands and feet and was in the process of removing the chest and lap restraints (DN 31-3, Ex. 2, Whittlesey's Aff.). He, therefore, requested the assistance of

5

Pendleton, and they entered the room and reapplied all the restraints on Plaintiff, who laughed and announced he would get out again (DN 31-2, Ex. 1, Pendleton's Aff.; DN 31-3, Ex. 2, Whittlesey's Aff.). Defendant Whittlesey told Plaintiff that he should not attempt to extricate himself again and that, if Plaintiff did, he would be forced to use his taser. *Id.* Plaintiff then stated, "'I know the law and you can't tase me in the restraint chair. I will sue you if you do." *Id.* Defendant Whittlesey again warned Plaintiff "not to attempt to defeat the chair or I would deploy my Taser," and Defendant Whittlesey and Pendleton left the room. *Id.*

After leaving the room, Defendant Whittlesey observed Plaintiff rocking the restraint chair back and forth, "'walking'" the chair across the cell floor (DN 31-3, Ex. 2, Whittlesey's Aff.). He asked Sergeant Danny Fite ("Fite") to enter the room and return the chair and Plaintiff to the center of the room. *Id.* After that, Defendant Whittlesey observed Plaintiff again attempting to walk the chair, "positioning himself very close to the toilet, which could be dangerous." *Id.* Therefore, Defendant Whittlesey requested the assistance of Fite and Deputy Kendall Adwell, and the three of them entered the room and secured the restraint chair to the floor drain in the center of the room in an attempt to prevent Plaintiff from walking the chair. *Id.* Defendant Whittlesey states that Plaintiff was yelling and cursing as they left the cell. *Id.*

At approximately 9:40 a.m., Defendant Whittlesey noticed that Plaintiff had again extricated his right hand from the restraints. *Id.* At that point, Defendant Whittlesey entered the room again, accompanied by Pendleton and Deputy Cary Hood (DN 31-2, Ex. 1, Pendleton's Aff.; DN 31-3, Ex. 2, Whittlesey's Aff.). Defendant Whittlesey deployed his taser to Plaintiff's thigh for five seconds, which had "the desired effect of ending [Plaintiff's] attempts to escape the restraint chair." *Id.* Pendleton placed Plaintiff's right hand back in the soft restraints attached to

6

the chair. *Id.* Medical staff were then called to examine Plaintiff "in accordance with post-Taser protocol," *id.*, and Plaintiff was cleared by the medical staff. *Id.*

Defendant Whittlesey avers, "In my training, education and experience, the appropriate force continuum was followed and the deployment of my Taser to [Plaintiff] for approximately five (5) seconds was necessary and appropriate to restore order and ensure the safety and security of the Jail, staff, and inmates" (DN 31-3, Ex. 2, Whittlesey's Aff.). He also reports that on June 5, 2015, he was carrying his X26 Taser, serial no. X00-482796. *Id.*

The Court concludes that the evidence shows that the force (tasing) was used by Defendant Whittlesey in a good-faith effort to restore discipline. The affidavits demonstrate that Plaintiff had earlier disrupted the jail and attempted to engage in a fight with another officer and that, after being placed in restraints, Plaintiff removed his restraints and caused a disturbance in defiance of orders. Defendant Whittlesey twice warned Plaintiff that continued attempts to remove the restraints would result in the use of a taser. Despite these warnings, Plaintiff removed his right-hand restraint, and Defendant Whittlesey administered a single, five-second burst of the taser to Plaintiff's thigh and then called for medical staff to examine Plaintiff.

Plaintiff's allegations are consistent with most of Defendant Whittlesey's averments. In his "Motion for Argument" (DN 15), Plaintiff reports that he told Dobbs and Pendleton "we're gonna fight"; that he "refused move" when they instructed him to stand up and go to the back of his cell; that he when he was pushed by Dobbs, he "took a combative stance . . . and told him if you touch me again I will F- you up"; that after being placed in the restraint chair he "moved the chair rocking it to move it around the front of the cell"; and that despite being warned that he

would be tased if he continued to remove his restraints, he, nevertheless, took his right hand out of the restraint. A jail has a legitimate interest in having inmates obey orders. *Caldwell*, 968 F.2d at 601. "'Inmates cannot be permitted to decide which orders they will obey, and when they will obey them. Someone must exercise authority and control.'" *Id*. (quoting *Soto v. Dickey*, 744 F.2d 1260, 1267 (7th Cir. 1984)).

Where the parties differ is when Plaintiff, in the "Motion for Argument" (DN 15), claims that Defendant Whittlesey "fired his taser in my right thigh for about 30 to 45 seconds," but Plaintiff does not support this unverified allegation with evidence. Defendant Whittlesey's five-second deployment of the taser, however, is supported by Pendleton's affidavit and by his own affidavit. The five-second deployment is further supported by another affidavit attached to the motion for summary judgment. Therein, Brian McPherson, a WCRJ employee, avers that he accessed the Taser Evidence Sync system on July 12, 2017 (DN 31-4, Ex. 3, McPherson's Aff.), and attached to his affidavit "a true and accurate copy of the Evidence Sync report for June 5, 2015 for X26 Taser serial no. X00-482796." *Id.* (Ex. A, Taser report). The attached report reflects that Defendant Whittlesey's taser (X26 Taser serial no. X00-482796) was deployed for five seconds at 9:36:40 a.m. on June 5, 2015 (DN 31-4, Ex. 3, McPherson's Aff., and Ex. A, Taser report).

Further, throughout the litigation of this action, Plaintiff did not allege any injury as a result of the tasing until he filed his response to the motion for summary judgment, when he alleges "I lost a little amount of blood, got some brusies on my thigh from being tazed, and I now suffer flashbacks and nightmares from being tazed" (DN 35). Even taking Plaintiff's allegations at face value and considering the evidence in a light most favorable to him, the injuries are minor and fail to show that Defendant Whittlesey tased him maliciously and sadistically to cause harm.

For the foregoing reasons, the Court concludes that Defendant Whittlesey's use of the taser was a good-faith effort to restore discipline and did not violate the Eighth Amendment. Therefore, Defendant Whittlesey, in his individual capacity, is entitled to summary judgment.

As to the official-capacity claim against Defendant Whittlesey, which is actually against Warren County, "where no constitutional violation occurs, the municipal defendant likewise cannot be held liable." *Hanson v. Madison Cty. Det. Ctr.*, No. 17-5209, 2018 WL 2324252, at *17 (6th Cir. May 22, 2018) (citing *Watkins v. City of Battle Creek*, 273 F.3d 682, 687 (6th Cir. 2001)). Having determined that no Eighth Amendment violation occurred, Defendant Whittlesey, in his official capacity, is entitled to summary judgment.

## IV.

Accordingly, **IT IS HEREBY ORDERED** that Defendant Whittlesey's motion for summary judgment (DN 31) is **GRANTED**.

Date: September 25, 2018

**Greg N. Stivers, Judge**
**United States District Court**

cc: Plaintiff, *pro se*
    Counsel of record
4416.005